UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALISON J. LAURITA,

    Plaintiff,

v.

Case No.:

CENTURION OF FLORIDA, LLC, and
MHM HEALTH PROFESSIONALS, LLC.,

    Defendants,
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Alison J. Laurita ("Plaintiff"), sues the Defendants, Centurion of Florida, LLC, and MHM Health Professionals, LLC, and alleges as follows:

1. This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)-(2) and §2000(e)-(3)(a), as amended by the Civil Rights Act of 1991 and Chapter 760 ("The Florida Civil Rights Act of 1992"), §760.10 *et seq.* The jurisdiction of this Court is founded upon 28 U.S.C. §1343 and 42 U.S.C. §2000(e)-5(f)(3).

2. Plaintiff, Alison J. Laurita, is a female who resides in Orange County, Florida. She was employed by the Defendants in Live Oak, Suwannee County, Florida.

3. The Defendant, Centurion of Florida, LLC, is a Florida corporation organized and existing under the laws of Florida. Centurion was an "employer" of Plaintiff under Title VII and the FCRA.

4. The Defendant, MHM Health Professionals, LLC., is a Foreign corporation that does business in, among other places, Live Oak, Florida. The Defendant MHM Health Professionals, LLC, was an "employer" of Plaintiff under Title VII and the FCRA.

5. Venue is proper in this Court in that the discriminatory activities as alleged herein occurred in Suwannee County, Florida.

## General Allegations

6. On March 29, 2018, Defendants offered Plaintiff a position as a Nurse Practitioner ("ARNP") at Suwanee Correctional Institution in Live Oak, Florida.

7. Defendants' job offer was accepted by Plaintiff on April 2, 2018.

8. In May of 2018, Defendants transferred Plaintiff to work in the Annex building. In the Annex, Dr. Alexis Figueroa was one of the two physicians under whom Plaintiff worked.

9. Dr. Fiqueroa was the supervisor of all the Annex medical staff and was Plaintiff's direct supervisor.

10. Dr. Figueroa subjected Plaintiff to sexual harassment in the following, but not limited to, ways.

11. Dr. Figueroa hugged or tried to hug Plaintiff on almost a daily basis. Plaintiff told Dr. Fiqueroa that his hugs were unwanted and to stop.

12. Dr. Figueroa made unwanted sexual comments to Plaintiff about her body, sexual acts and his alleged sexual experiences with Plaintiff's co-workers.

13. In June of 2018, Plaintiff reported the hostile work environment to Diane Parrish, the Health Service Administrator. Plaintiff told Parrish about the unwanted touching and sexual comments by Dr. Figueroa. In response, Parrish laughed. She said that Dr. Figeroa was "just a hot-blooded Latin." She said she would speak to Dr. Figueroa about his behavior.

14. Dr. Figueroa continued to hug, touch and make unwanted sexual comments to Plaintiff. For example, Dr. Figueroa continued to walk up to Plaintiff and grab or embrace her.

15. Dr. Figueroa said he was unhappy with his girlfriend Erica with regard to sexual issues and went into grotesque detail. He made vulgar remarks such as discussing "her panties."

16. Dr. Figueroa told Plaintiff that he had sex with many of the nurses at the facility.

17. Dr. Figueroa talked about sex acts with other nurses and "women at the gym."

18. Dr. Fiqueroa asked Plaintiff "if she liked to swallow?"

19. In July of 2018, Parrish received another report from Plaintiff regarding Dr. Figueroa's sexual harassment. Parrish asked Plaintiff to write something. Parrish refused to give Plaintiff a copy because she said that was against HR procedure.

20. Parrish said she would address the matter with HR and that HR would contacting Plaintiff.

21. Dr. Fiqueroa continued to sexually harass Plaintiff after her July report.

22. Dr. Figueroa made inappropriate sexual gestures with his hands, fruits and vegetables.

23. Dr. Fiqueroa asked Plaintiff if she wanted to come over to his apartment.

24. Dr. Figueroa continued to talk about sex with other women. For example, he said that he had sex with a female employee "but she is crazy and only lasts for a minute."

25. Dr. Figueroa made vulgar and disgusting remarks about other women at work. For example, he said he saw Ms. Parrish in a pair of red pants and could see an outline of the different parts of her body. Dr. Figueroa said "her vagina was like a billboard, but nobody was buying." Plaintiff was disgusted by such comments and often went to the bathroom feeling sick and cried.

26. In August of 2018, Plaintiff followed up with Parrish about her reports about Dr. Fiqueroa. Plaintiff told Parrish that Dr. Figueroa had continued to make sexual inappropriate sexual comments and gestures. Parrish said that a woman from HR had visited the Annex. Parrish told Plaintiff she needed to "toughen her skin because she worked in a prison system.

27. Around this time Dr. Fiqueroa went on vacation. After he returned, he continued to sexually harass Plaintiff.

28. Dr. Figueroa put his leg between Plaintiffs causing her to trip. He would then hug her as she lost balance.

29. Dr. Figueroa continued to make sexual remarks about women's bodies and sex at work.

30. Dr. Figueroa continued to talk about the women he allegedly had sex with on the job. Dr. Figueroa told Plaintiff that she should leave her husband and asked "what would it take for you to leave?"

31. In September of 2018, after Plaintiff's last report to Parrish, she was transferred back to the Main Campus, called the H-Dorm.

32. Plaintiff had to continue to go to the Annex and be confronted by Dr. Figueroa.

33. Dr. Figueroa continued to talk about oral sex and ask Plaintiff "if she swallowed?"

34. Dr. Figueroa continued to touch and hug Plaintiff.

35. Plaintiff suffered from severe anxiety and was often unstable on her feet.

36. On or about October 3, 2018 Plaintiff fell at work and was severely injured. She was taken by ambulance to the emergency room.

37. Plaintiff was given work related restrictions and placed on a Workers' Compensation recovery program.

38. Plaintiff continued treatment with healthcare providers for her neck and back injuries. She was restricted in the use of her left arm.

39. Plaintiff was covered by Workers' Compensation and used her Personal Leave of Absence.

40. On or about March 19, 2019, Defendants' representatives called Plaintiff and terminated her employment.

41. On August 2, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's charge was automatically dual-filed with the Florida Commission on Human Relations ("FCHR") as of August 2, 2019, pursuant to the Worksharing Agreement between the EEOC and FCHR. On January 30, 2020, the EEOC issues a Notice of Rights Letter which we received by Plaintiff on February 3, 2020. This action has been timely commenced under Title VII and under the FCRA.

## COUNT I - SEXUAL HARASSMENT

42. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 41 above.

43. This is an action under Title VII and Chapter 760.10 et. seq, the Florida Civil Rights Act of 1992 ("FCRA"). The Defendants were a single or joint employer of Plaintiff as defined by the Title VII and FCRA in that both had degrees of control over the terms and conditions of Plaintiff's employment. In addition, Defendants were interrelated operations under Title VII and the FCRA.

44. During Plaintiff's employment with Defendants, she was subjected to sexual harassment, which affected the terms, conditions, and privileges of her employment and was of such a severe and pervasive nature so as to alter the conditions of her employment and create an abusive and hostile work environment. Defendants were placed on actual and constructive notice of the sexual harassment, but failed to take prompt remedial action.

45. Defendants are directly liable for the sexual harassment since, among other reasons, they failed to take prompt and effective remedial action. In addition, Defendants had constructive or actual notice that Dr. Figueroa had sexually harassed other women.

46. As a result of the wrongful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish, and other harms and losses.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, or reinstatement, together with all awardable compensatory damages, including but not limited to damages for emotional distress and harm, and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Title VII and the FCRA, Chapter 760.10, sections 760.01-760.11.

## COUNT II- RETALIATION

47. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 41 above.

48. The Defendants were a single or joint employer of Plaintiff as defined by the Title VII and FCRA in that both had degrees of control over the terms and conditions of Plaintiff's employment. In addition, Defendants were interrelated operations under Title VII and the FCRA.

49. At all times material to this action, there has been in full force and effect a provision of Title VII and Florida law, Chapter 760.10 et seq, that prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

50. Plaintiff complained to Defendants' management about conduct that constituted sexual harassment. Accordingly, Plaintiff engaged in protected opposition conduct and was protected against retaliation under the applicable civil rights statutes.

51. Plaintiff complained about unlawful harassment of a sexual nature. In response, action was not taken to stop the sexual harassment and Plaintiff was physically intimidated, transferred and eventually discharged.

52. As a result of the unlawful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish and other harms and losses.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, and/or reinstatement, together with all other compensatory damages, including but not limited to damages for emotional distress and harm, and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Title VII and Chapter 760.10, section 760.01-760.11.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL COUNTS**

*/s/ Ronald W. Fraley*

Ronald W. Fraley
Florida Bar No. 0747025
The Fraley Firm, P.A.
412 East Madison Street, Suite 1213
Email: rfraley@fraleylawfirm.com
Tampa, Florida 33609
Telephone: 813-229-8300
Attorney for Plaintiff